IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

SHYHEIM DEEN EL-MU'MIN, No. 509071, )
a/k/a JAMES I. LENOIR, JR., )
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　v. ) No. 06-4070-CV-C-SOW
　　　　　　　　　　　　　　　　　　　　　　　)
DAVE DORMIRE, Superintendent, et al., )
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants. )

## REPORT AND RECOMMENDATION

　　　　Plaintiff Shyheim Deen El-Mu'Min, a/k/a James I. Lenoir, Jr., an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

　　　　On February 28, 2007, defendants filed a motion for summary judgment. On May 29, 2007, a conference was held in this case, with both plaintiff and defense counsel in attendance. At the conference, plaintiff's motions for court order/injunction, motion to continue, motion for an extension of time, and motion for return of property were addressed. Upon consideration, it was ordered that defense counsel ensure plaintiff had access to necessary legal material for purposes of responding to defendants' motion for summary judgment. Plaintiff filed suggestions in opposition to defendants' motion for summary judgment on July 10, 2007. Plaintiff's motions seeking court order/injunction, to continue, for extension of time and return of property should, therefore, be denied as moot.

*Summary Judgment Standard*

　　　　Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to

demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

*Facts*

Plaintiff is a prisoner of the State of Missouri and at the time he filed suit, was housed at the Jefferson City Correctional Center (JCCC). Plaintiff is now housed at the Crossroads Correctional Center. The defendants in this case are from JCCC and plaintiff's claims relate to his incarceration at JCCC.

Plaintiff's name at the time he was committed to prison was James Lenoir, Jr. Plaintiff, a professed life-long follower of the Muslim faith, petitioned the Circuit Court of Washington County, Missouri, to change his legal name to reflect his religious beliefs. On August 8, 2004, a judgment was entered, changing plaintiff's legal name to Shyheim Deen El-Mu'Min.

Upon receiving a judgment from the state court changing his name, plaintiff provided a copy to defendant Deardeuff, the Records Officer at JCCC. Plaintiff's prison records Face Sheet (a listing of plaintiff's personal data) was changed on January 26, 2005, to reflect plaintiff's new legal name. On January 26, 2005, JCCC Superintendent, defendant Dormire, directed a memorandum to all JCCC staff informing them of plaintiff's name change and the procedures to be followed regarding it. Such procedures specifically advised:

> (1) The Offender ID, Back-Up Cards, and issued clothing will be changed to show the offender's DOC name James I. Lenoir, Jr., and legal name, Shyheim Deen El-Mu'Min, as an a/k/a name; (2) The Offender shall be required to use his commitment name and legal name in signing in and out of housing, law library, work, school treatment, religious services, etc.; (3) The Offender shall be required to use his commitment name and legal name in signing for canteen purchases, banking transactions, sick call, grievances, property inventories, notary services, etc.; (4) The offender shall be required to use his commitment name and legal name and DOC number for his return address on mail; (5) The Institution shall process his incoming offender mail and visitors even when the mail or visitor uses only his legal name and DOC number; (6) The offender's legal name shall be acceptable for personal use inside the institution. Staff should use his legal name, where practicable, in communicating orally. Any harassment regarding the legal name will not be tolerated; (7) The Department shall use his commitment name and legal name in official DOC communications including but not limited to directives, notices, orders, hearing documents, conduct violations, lay-ins, and passes; (8) The legal name change does not justify his refusal to acknowledge Department communication or directives, both oral and written.

(Defendants' Motion for Summary Judgment, Doc. 44, Exh. 6, Jan. 26, 2005 Memorandum directed to all Staff, from Dave Dormire, Superintendent, JCCC.) <u>See also</u> Supplement to Defendants' Motion for Summary Judgment, Doc. 61, Exh. 2, Department Policy/Procedure Information Memorandum, No. D5-1.1 Offender Identification, July 1, 1999.

In September and November 2005, plaintiff filed an IRR and Grievance, complaining that the mailroom staff was denying him mail, in violation of his constitutional rights. Plaintiff alleged that prison policy required the mailroom to deliver his mail, even if it showed only his new legal name, without any reference to his committed name. Plaintiff alleged that the mailroom was returning his mail to the sender without cause, and was improperly crossing out his legal name on his mail and writing his committed name in its place.

On September 20, 2005, the Mailroom Supervisor, defendant Campbell, sent plaintiff a Memorandum explaining the circumstances (misspelling of plaintiff's name) that resulted in his mail being returned to sender. The Memorandum also indicated that a memo was sent to staff, reminding them of plaintiff's legal name change, and that procedures were being implemented making it easier for mailroom staff to easily recognize legal name changes of offenders for purposes of processing their mail.

3

The November 10, 2005 Superintendent's Response to plaintiff's Grievance, provided by defendant Dormire, advised plaintiff that the mailroom staff had taken steps to ensure plaintiff was receiving all mail addressed in his legal name, as well as all mail addressed to his commitment name. The response advised plaintiff that the one item of mail returned to the sender was returned only because plaintiff's name was misspelled. The response further advised plaintiff that due to the large volume of mail being processed daily within the mailroom, errors occur from time to time; however, steps were being taken to minimize such errors.

On December 11, 2005, plaintiff filed his grievance appeal of the Superintendent's Response. The Division Director of Adult Institutions, defendant Steve Long, responded, affirming the response of the Superintendent. Further in response, the mailroom supervisor, defendant Campbell, again sent plaintiff correspondence providing that prison policy requires that he receive mail, even when the mail uses only his legal name, but advised plaintiff he should use his commitment name, in combination with his new legal name, and DOC number for his return address on mailings (plaintiff's outgoing mail was not always meeting the requirement that he use both his legal and commitment names).

A July 12, 2006 Memorandum to plaintiff from JCCC Records Officer, defendant Deardeuff, advised plaintiff that although program changes have been submitted to Information Systems so the prison roster can be pulled to include both plaintiff's legal and commitment names, such program changes were not yet complete. Plaintiff was advised that both he and JCCC staff should be using both plaintiff's legal and commitment names in written communication.

Plaintiff states that named defendants did not taunt or harass him about his legal name change, but that defendants are responsible for corrections personnel refusing to fully honor and recognize his legal name.

Plaintiff's mail is currently being processed at Crossroads Correctional Center under both his legal and commitment names, and plaintiff concedes he is not having problems with his mail.

*Discussion*

The convicted inmate does not completely shed his First Amendment rights when he is incarcerated. Salaam v. Lockhart, 856 F.2d 1120, 1122 (8th Cir. 1988). However, the fact of confinement often means that an inmate may not be able to exercise certain First Amendment

rights as freely as he might outside the prison.  Id.  "[T]here must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Id.

The Eighth Circuit, in Salaam v. Lockhart, 905 F.2d 1168 (8th Cir. 1990), set forth the rule of law for accommodating religious name changes by prisoners.  The court provided that the state need only reform its recordkeeping to the extent necessary to allow the inmate to receive services and information in his new legal name within the prison.  Id. at 1170.  The court specifically affirmed the a/k/a alternative.  Id. at 1174-75.  The court stated that the a/k/a alternative does not eliminate the display of the committed name and number on clothing and in prison files; rather, the legal name is to be added.  Id.  However, the court held that state authorities must deliver mail addressed to an inmate using only his changed legal name.  Id. at 1170.  The Salaam court further provided that the a/k/a alternative could be withdrawn from any prisoner who is informed he must respond to a former name, but who repeatedly refuses to do so.  Id. at 1175.  The court emphasized, however, that prison guards should be instructed to make an effort to use prisoners' legal names.  Id.

In the instant case, the legal name change policy of JCCC, as carried out by the defendants in this case, clearly follows the standard set forth by the Eighth Circuit in Salaam v. Lockhart, 905 F.2d. at 1168.  The fact that plaintiff's commitment name still appears on records (i.e.: canteen receipts and medical records) with his legal name identified as his a/k/a, therefore, is not a violation of plaintiff's First Amendment rights because the Eighth Circuit has specifically authorized such policy and procedure.

To the extent plaintiff alleges denial of incoming mail, the undisputed evidence is that plaintiff was denied his incoming mail on one occasion, and upon being notified, defendants promptly remedied the problem.  To the extent plaintiff alleges his outgoing mail was returned to him on several occasions because he did not list his commitment name in conjunction with his legal name in the return address, plaintiff fails to provide any evidence that defendants were not properly applying the a/k/a method affirmed by the Eighth Circuit in Salaam v. Lockhart, 905 F.2d. at 1168.  The Salaam court provided that incoming mail could be received under a prisoner's legal name only, but provided that both the prisoner's commitment and legal names could be required by prison officials for other purposes.

To the extent plaintiff alleges harassment by defendants, such harassment is not supported by the evidence. Plaintiff concedes in his deposition that none of the defendants harassed or taunted him. Rather, plaintiff appears to allege that JCCC policy, which refused to exclusively recognize his changed legal name for all purposes within the prison, constituted harassment by defendants who enforced such policy. As set forth above, JCCC's a/k/a policy does not violate plaintiff's constitutional rights, and thus, mere enforcement of such policy by defendants cannot be evidence of harassment.

*Conclusion*

In applying Salaam v. Lockhart, 905 F.2d. at 1168, there is no dispute of material fact that the a/k/a method of recognizing plaintiff's changed legal name is legally sufficient. Thus, there is no dispute of material fact that JCCC's policy implementing such procedure is constitutionally adequate to protect plaintiff's rights. To the extent plaintiff had some difficulty receiving his mail, there is no dispute that such a problem was only an isolated incident, and was based on a misspelling of his name rather than a refusal to recognize his changed legal name. Plaintiff's further complaints regarding defendants' handling of his mail and recognition of his legal name change within the prison were clearly in accord with JCCC policy and Salaam. Plaintiff has failed to come forward with any evidence to support that the actions of defendants in applying JCCC's a/k/a policy in the recognition of his changed legal name violated his constitutional rights, or that defendants harassed plaintiff regarding his legal name change in violation of his rights. Based on the foregoing, no reasonable jury could find that defendants have not adequately protected plaintiff's constitutional rights under the First Amendment in their recognition of plaintiff's legal name change. Defendants' motion for summary judgment should be granted.

IT IS, THEREFORE, RECOMMENDED that plaintiff's motions seeking court order/injunction, to continue, for extension of time and return of property be denied as moot. [40, 45, 50, 51, 53, 57, 58] It is further

RECOMMENDED that defendants' motion for summary judgment be granted and plaintiff's claims be dismissed. [44]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the

specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 20th day of August, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge